**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 10-3375 ) |
| v. | ) DECLARATION IN SUPPORT OF ) SUMMARY JUDGMENT |
| NATIONAL GEOSPATIAL- INTELLIGENCE AGENCY, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

**DECLARATION OF BARRY M. BARLOW**

INTRODUCTION

I, Barry M. Barlow hereby declare and state:

1. I am the National Geospatial-Intelligence Agency (NGA) Director, Acquisition Directorate. I have held this position since 2009. I make this declaration in support of NGA's Motion for Summary Judgment in this proceeding. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

2. NGA develops imagery and map-based intelligence solutions for U.S. national defense, homeland security and safety of navigation. NGA provides geospatial-intelligence, meaning the exploitation and analysis of imagery and

1  geospatial information to describe, assess and visually depict physical features and

2  geographically referenced activities on the Earth.  Geospatial-intelligence consists

3  of imagery, imagery intelligence and geospatial (e.g. mapping, charting and

4  geodesy) information.

5     3. As the Director of the Acquisition Directorate in NGA, and as an original

6  classification authority for the Agency, I am responsible for protecting information

7  that originates with NGA or otherwise implicates NGA interests.  As part of my

8  official duties, I ensure that any determinations as to the release or withholding of

9  such information are proper and do not endanger NGA personnel or facilities, and

10  do not jeopardize the interests of NGA or of U.S. national security.

11     4. As part of my official duties I am authorized to assess the current, proper

12  classification of NGA information, based on the classification criteria of Executive

13  Order 12958[1], as amended, ("E.O. 12,958"), and applicable NGA regulations.

14  Furthermore, as a senior NGA official and under a written delegation of authority

15  pursuant to section 1.3(c) of E.O. 12,958, I hold original classification authority at

16  the SECRET level.  I am therefore authorized to conduct classification reviews and

---

[1] E.O. 12,958 was amended by E.O. 13,292.  See Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003).  All citations to E.O. 12,958 are to E.O. 12,958 as amended by E.O. 13,292.  On December 29, 2009, President Barack Obama issued E.O. 13,526, the relevant provisions of which superseded E.O. 12,958, as amended, and E.O. 13,292 when they went into effect in June 2010.  See 75 Fed. Reg. 707 (Jan. 5, 2010).

1   to make original classification and declassification decisions and to make

2   determinations as to release or withholding of NGA information, including

3   information that may be the subject of Freedom of Information Act ("FOIA"), 5

4   U.S.C. § 552, requests.  Information that reasonably could be expected to cause

5   damage to national security, if improperly disclosed, shall be classified as

6   CONFIDENTIAL; serious damage as SECRET; and exceptionally grave damage

7   as TOP SECRET.

8      5.  Through the exercise of my official duties I am familiar with this civil

9   action.  I submit this declaration in support of NGA's motion for summary

10  judgment in this proceeding.

11     6.  The Center for Human Rights and Constitutional Law's (plaintiff) FOIA

12  request sought satellite imagery of the Cuban coastal waters, taken on or about

13  February 24, 1996, and documents related to those images.   As an original

14  classification authority for NGA, I have determined that NGA can neither confirm

15  nor deny the existence or nonexistence of the records responsive to plaintiff's

16  FOIA request because the fact of the existence or nonexistence of any records

17  responsive to the request is currently and properly classified information

18  concerning intelligence sources and methods, exempt from release under FOIA

3

1   exemptions (b)(1) and (b)(3).  I explain this determination, commonly referred to

2   as a Glomar response[2] below.

3       7.  As further discussed below the fact of the existence or nonexistence of the

4   requested records is currently and properly classified in accordance with E.O.

5   12,958 and is protected from disclosure by statute.  Official NGA

6   acknowledgement of the requested records would reveal information that concerns

7   intelligence activities, intelligence sources and methods, and foreign relations.  The

8   disclosure of such information reasonably could be expected to cause damage to

9   the national security of the United States.

10      8.  The purpose of this declaration is to articulate the basis for NGA's Glomar

11  response to plaintiff's request for information under the FOIA and to identify the

12  applicable FOIA exemptions that support the Glomar response in this case.

13                          Plaintiff's FOIA Request

14      9.  Plaintiff sent NGA a FOIA request dated December 29, 2009, requesting:

15          [A.] Any satellite images, satellite imagery, satellite photographs, or
16          satellite video images of the area in which an incident took place on
17          February 24, 1996 over or near the north coast of Cuba in which two
18          aircraft flown by the Brothers to the Rescue organization of Florida
19          were intercepted in flight and shot down by Cuban MiGs, including
20          but not limited to satellite images, satellite imagery, satellite

---

[2] The origins of the Glomar response trace back to Phillippi v. CIA, 546 F.2d 1009
(D.C. Cir. 1976), which affirmed CIA's use of the "neither confirm nor deny"
response to a FOIA request for records concerning CIA's reported contacts with
the media regarding Howard Hughes' ship, the "Hughes Glomar Explorer."

4

photographs, or satellite video images showing any of the Brothers to
the Rescue or Cuban aircraft involved in the incident…whether
created any time before, during, or after the downing of the two
aircraft, including any images or photos of any wreckage.

[B.]Any documents or records relating to the items sought in number
1 above including but not limited to reports, requests, assessments,
data compilations, directives, instructions, guidance, memoranda,
correspondence, notes, indices, cables, telexes, telegrams, or letters,
whether maintained in paper, digital, video, digital tape, audio tape, or
any other preserved form, regarding the aforementioned satellite
images, satellite imagery, satellite photographs, or satellite video
images.

See Plaintiffs' Complaint at 3.

10. By letter dated April 6, 2010, NGA denied the plaintiff's FOIA request stating that it could "neither confirm nor deny the existence or nonexistence of records responsive to your request." The letter further stated that records, if they exist, are "classified for reasons of national security under Executive Orders 12,951 and 12,958" and that acknowledging the existence or nonexistence of such records "would also relate directly to information concerning intelligence sources, methods, or capabilities, and as a result, is exempt from search, review, publication or disclosure in accordance with Title 10, Section 457, Unites States Code."

11. Plaintiff appealed NGA's denial by letter dated April 9, 2010. In light of plaintiff's filing of the current litigation on May 5, 2010, NGA has ceased processing the administrative appeal the plaintiff filed with NGA.

5

Basis for NGA's Glomar Determination

12. NGA's response to plaintiff's FOIA request —neither confirming nor denying the existence or non-existence of records—is commonly referred to as a Glomar response.  This response protects a specific and narrow type of classified fact, and is provided for under E.O. 12,958, section 3.6(a):

> [I]n response to a request for information under the Freedom of Information Act . . . An agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors.

Plaintiff's request presents an instance where mere confirmation or denial of the existence of responsive records would reveal classified facts—NGA's interest, ability, or involvement in obtaining satellite data, and the breadth and scope of that interest.  Such a response would reveal intelligence activities, intelligence sources and methods, and concern U.S. foreign relations.  Thus, NGA's only course of action here is to invoke a Glomar response by stating that it can neither confirm nor deny the existence or nonexistence of the requested records.

13. By contrast, in a typical FOIA request scenario, a FOIA requester submits a request to NGA for information on a particular subject and NGA responds by conducting a search of non-exempt records and advising whether responsive records were located.  If records are located, NGA provides non-exempt records or reasonably segregable non-exempt portions of records, and withholds the

6

1   remaining exempt records and exempt portions of records. In this typical

2   circumstance, NGA's response, either to provide or not provide the records sought,

3   actually confirms the existence or nonexistence of NGA records. Generally, such

4   confirmation poses no harm to national security or intelligence sources and

5   methods because the response focuses on releasing or withholding specific

6   substantive information. In those circumstances, the fact that NGA possesses or

7   does not possess records is not itself a classified fact.

8       14. However, in this case, NGA's interest, ability, or involvement in obtaining

9   satellite data, and the breadth and scope of that interest is currently a properly

10  classified fact, the disclosure of which reasonably could be expected to cause

11  damage to national security. In other words, what is classified is not just

12  individual records themselves on a document-by-document basis, but also the mere

13  fact of NGA's intelligence gathering and capability, and the possibility that NGA

14  possesses responsive records derived there from. NGA confirmation of the

15  existence or nonexistence of records responsive to any of the categories in

16  plaintiff's request would acknowledge an intelligence interest, or lack thereof, in

17  the time, location, incident, foreign nation, etc., concerning the subject of

18  plaintiff's request and would reveal intelligence activities, intelligence sources and

19  methods, and concern U.S. foreign relations.

7

1    15. In order to be credible and effective, NGA must use the Glomar response

2  consistently in all cases where the existence or nonexistence of records responsive

3  to a FOIA request is a classified fact, including those instances in which NGA does

4  not possess records responsive to a particular request.  If NGA were to invoke a

5  Glomar response only when it possessed responsive records, and inform requesters

6  when it had no records, the Glomar response would unsurprisingly be interpreted

7  as an admission that responsive records exist.  This practice would reveal the very

8  information that NGA must protect in the interest of national security, provide a

9  valuable advantage to terrorist organizations and foreign intelligence services, and

10  endanger NGA's intelligence activities worldwide.

11    16. If NGA were to admit that it had "any satellite images, satellite imagery,

12  satellite photographs or satellite video images" related to a specific incident, date,

13  and location, NGA would alert foreign intelligence services to NGA's intelligence

14  capabilities and interests.  Disclosure of whether NGA was involved or not in

15  collecting satellite data or any other intelligence activities related to this request

16  would expose whether or not NGA maintains an intelligence interest in specific

17  activities or locations.  Additionally, disclosure of whether or not NGA has the

18  requested information would reveal information concerning the reach, locations,

19  and capabilities or limitations of NGA's intelligence activities and operations.

20  With knowledge of NGA's intelligence interests and capabilities, foreign

1  intelligence services could initiate denial and deception techniques which could

2  affect NGA access to vital sources of information. For instance, knowing where

3  and when NGA seeks to collect data, foreign adversaries could seek to provide

4  false sources of data or to prevent collection of data altogether.

5     17. If NGA were to deny that it had such images related to a specific incident,

6  date, and location, NGA would likewise alert foreign intelligence services to

7  NGA's intelligence capabilities and interests, or lack thereof. Knowledge of

8  NGA's capabilities and areas of interest would be the foundation of any foreign

9  attempt to develop "denial and deception" techniques to defeat those capabilities.

10     18. The potential harm to NGA is possibly magnified if a foreign intelligence

11  service were to submit multiple intelligence requests. If a foreign intelligence

12  service could gather information on NGA's intelligence capabilities and interests

13  using multiple FOIA requests, the foreign intelligence service could cobble

14  together those responses to create a picture of NGA's overall capabilities and

15  intelligence interests. Every country or intelligence service has limited resources.

16  The disclosure of potential U.S. intelligence target areas and interests would

17  indicate how NGA allocates its resources. Any one FOIA request standing alone

18  might not allow great insight into where NGA is (and is not) monitoring foreign

19  adversaries. However, multiple requests would potentially allow adversaries to

9

1  hide their activities by exploiting data about how NGA allocates its collection

2  resources.

3      19. In sum, for NGA to officially confirm or deny the existence or nonexistence

4  of the requested records would reveal classified national security information that

5  concerns intelligence activities, intelligence sources and methods, and U.S. foreign

6  relations.  I have determined that such a revelation could be expected to cause

7  damage to U.S. national security.  Accordingly, I have determined that the fact of

8  the existence or nonexistence of records responsive to plaintiff's FOIA request is

9  currently and properly classified and exempt from release under FOIA exemptions

10  (b)(1) and (b)(3).

11                          Applicable FOIA Exemptions

12  A. FOIA Exemption (b)(1)

13      20. FOIA exemption (b)(1), 5 U.S.C. § 552(b)(1), provides that the FOIA

14  disclosure provisions do not apply to matters that are:

15          (A) specifically authorized under criteria established by an Executive
16          order to be kept secret in the interest of national defense or foreign
17          policy and (B) are in fact properly classified pursuant to such
18          Executive order.
19
20      21. Section 1.1(a) of E.O. 12,958 provides that information may be originally

21  classified under the terms of this order only if all of the following conditions are

22  met:

(1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of E.O. 12,958; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security and the original classification authority is able to identify or describe the damage.

22. Furthermore, section 3.6(a) of E.O. 12,958 specifically states that "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors." E.O. 12,958 therefore explicitly sanctions precisely the type of response that NGA has provided to plaintiff in this case.

23. Consistent with Sections 1.1(a) and 3.6(a) of E.O. 12,958, and as described below, I have, as an original classification authority, determined that: the existence or nonexistence of the requested records is a fact that constitutes information owned by and under the control of the U.S. Government; this information is a properly classified fact that concerns E.O. 12,958 section 1.4(c) intelligence activities and intelligence sources and methods, and E.O. 12,958 section 1.4(d) foreign relations of the U.S.; and the unauthorized disclosure of this fact reasonably could be expected to result in some level of damage to the national security. In the subsequent paragraphs, I identify and describe the potential damage.

11

1    1. Intelligence Activities

2    24. Responding to plaintiff's FOIA request with anything other than a Glomar

3    response reasonably could be expected to cause some level of damage to U.S.

4    intelligence activities.  An acknowledgement of information regarding specific

5    intelligence activities reveals NGA's specific intelligence interests and capabilities.

6    Terrorist organizations, foreign intelligence services and others who have interests

7    opposed to those of the United States use this information to thwart NGA

8    activities.  These parties continually search for information regarding the activities

9    of NGA and are able to gather information from myriad sources, analyze this

10    information, and create ways to defeat NGA activities from seemingly disparate

11    pieces of information.  In this case acknowledging the existence or nonexistence of

12    the requested records reasonably could be expected to cause some level of damage

13    to national security by disclosing intelligence collection efforts.

14    2. Intelligence Sources and Methods

15    25. Responding to plaintiff's FOIA request with anything other than a Glomar

16    response reasonably could be expected to cause some level of damage to U.S.

17    intelligence sources and methods.  Intelligence sources and methods include the

18    business practices and methodological basic "tools" used by NGA to accomplish

19    its mission.  They can include sophisticated technological tools, liaison

20    relationships, and NGA's identification of targets for intelligence collection

1  activity, among other sensitive sources and methods. As stated above, to confirm

2  or deny whether NGA has records responsive to Plaintiff's request could risk the

3  disclosure of these intelligence sources and methods.

4       26. Intelligence sources and methods must be protected from disclosure in

5  every situation where a certain intelligence interest, capability, or technique is

6  unknown to those groups that could take countermeasures to nullify its

7  effectiveness. Secret information-collection techniques, capabilities, or

8  technological devices are valuable (from an intelligence-gathering perspective)

9  only so long as they remain unknown and unsuspected. Once an intelligence

10  source or method (or the fact of its use in a certain situation) is discovered, its

11  continued successful use by NGA is seriously jeopardized. In fact, detailed

12  knowledge of intelligence sources and methods must be protected from disclosure

13  because such knowledge would be of material assistance to those who seek to

14  detect, prevent, or damage U.S. intelligence operations.

15       27. Because foreign intelligence services view discovery of NGA capabilities as

16  one of their primary defensive missions, these admissions would be of great

17  benefit, by enabling the foreign services to redirect their resources to identify

18  potential NGA sources, circumvent the NGA's monitoring efforts, and generally

19  enhance their intelligence activities at the expense of the United States.

13

28. NGA must do more than prevent explicit references to an intelligence source or method; it must also prevent indirect references to such a source or method. One vehicle for gathering information about NGA capabilities is by reviewing officially-released information. Terrorist organizations and foreign intelligence services have the capacity and ability to gather information from myriad sources, analyze it, and deduce means and methods (from disparate and even seemingly unimportant details) to defeat NGA collection efforts. Even seemingly innocuous, indirect references to an intelligence source or method could have significant adverse effects when juxtaposed with other publicly-available data.

29. As discussed below, intelligence sources and methods information also falls within the ambit of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i)(1) and thus is exempt from disclosure under FOIA exemption (b)(3). The information sought by the plaintiff is specifically related to this statutory protection. Accordingly, FOIA exemptions (b)(1) and (b)(3) apply independently and co-extensively to plaintiffs FOIA request.

3. Foreign Relations

30. Responding to plaintiff's FOIA request with anything other than a Glomar response reasonably could be expected to cause some level of damage to U.S. foreign relations. In carrying out its legally authorized intelligence activities, NGA

14

1  engages in activities that if known by foreign nations, could reasonably be

2  expected to cause damage to U.S. relations with affected or interested nations.

3  Although it is generally known that NGA provides products and services related to

4  geospatial intelligence, identifying an interest in a particular matter or publicly

5  disclosing a particular intelligence operation could well cause the affected or

6  interested foreign government to respond in ways that would seriously damage

7  U.S. national interests.  If specific operations involving foreign nations were

8  exposed or publicly acknowledged U.S. foreign relations would be adversely

9  impacted.  The foreign government's response could be of a diplomatic or

10  economic nature, a ground for anti-American propaganda, or a reason for

11  retaliation against American citizens or other American interests.  Such responses

12  could reasonably be expected even though the events may be several years past.

13  Perceptions of violation of sovereignty can generate retribution even years later.

14      31. An official acknowledgment that NGA possesses the requested information

15  also could be construed by a foreign government, whether friend or foe, to mean

16  that NGA has collected intelligence information on its citizens or resident aliens.

17  Additionally, such acknowledgement could suggest NGA has operated undetected

18  within that country's borders. For the same reasons described above, such a

19  perception could adversely affect U.S. foreign relations with that nation.

15

1    32. In conclusion, NGA can neither confirm nor deny whether records exist that

2    would be responsive to plaintiff's request.  My determination that the existence or

3    nonexistence of the requested records is classified has not been made to conceal

4    violations of law, inefficiency, or administrative error; prevent embarrassment to a

5    person, organization or agency; restrain competition; or prevent or delay the

6    release of information that does not require protection in the interests of national

7    security.

8    B. FOIA Exemption (b)(3)

9    33. FOIA exemption (b)(3), 5 U.S.C. 552(b)(3), permits the U.S. Government

10   to withhold information prohibited from disclosure by federal statute that either

11       (A) requires that the matters be withheld from the public in such a
12       manner as to leave no discretion on the issue, or (B) establishes
13       particular criteria for withholding or refers to particular types of
14       matters to be withheld.
15
16   34. Section 102A (i)(1) of the National Security Act of 1947, as amended, 50

17   U.S.C. § 403-1(i)(1) (the "National Security Act"), provides that the Director of

18   National Intelligence (DNI) "shall protect intelligence sources and methods from

19   unauthorized disclosure."  NSA § 102A(i)(1) specifically "refers to particular types

20   of matters to be withheld," as described in FOIA exemption (b)(3).

21   35. As discussed above, confirming the existence or nonexistence of responsive

22   records would necessarily reveal NGA's intelligence sources and methods.  Any

16

1   confirmation would thus result in an unauthorized disclosure of intelligence

2   sources and methods, which NSA § 102A(i)(1) forbids.

3       36. Because plaintiff's FOIA request falls within the ambit of Section 102

4   (A)(i)(1) of the National Security Act of 1947, it is exempt from disclosure under

5   FOIA exemption (b)(3). In contrast to E.O. 12,958, as amended, this statute

6   further protects intelligence sources and methods and does not require NGA to

7   identify or describe the damage to national security that reasonably could be

8   expected to result should NGA confirm or deny the existence of records responsive

9   to plaintiff's request. Regardless, because the statute and the Executive Order

10  relate to the protection of sources and methods, I refer the Court to the paragraphs

11  above for a description of the damage to national security should anything but a

12  Glomar response be provided to plaintiff in this case. Accordingly, FOIA

13  exemptions (b)(1) and (b)(3) apply independently and co-extensively to plaintiff's

14  request.

15                              CONCLUSION

16      37. The existence or nonexistence of the requested records, irrespective of the

17  content of such putative records, is itself a properly classified fact, and is so

18  intricately intertwined with intelligence activities, intelligence sources and

19  methods, and U.S. foreign relations, that this fact must remain classified. As such,

20  I have determined that the only appropriate response is for NGA to neither confirm

                                    17

1    nor deny the existence of the requested records under FOIA exemptions (b)(1) and

2    (b)(3).

3

4            I hereby declare under penalty of perjury that the foregoing is true and

5    correct.

6            Executed this 15th day of October 2010.

7

8

9    _____
     BARRY M. BARLOW

10   Director, Acquisition Directorate
     National Geospatial-Intelligence Agency

11

12

13

14

15

16

17

18

19

20

18